United States District Court
Southern District of Texas
**ENTERED**
June 28, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, et al.,<br><br>　　　　Plaintiffs,<br>VS.<br><br>GRACE FUNERAL HOME, INC.,<br><br>　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>CIVIL ACTION NO. 6:19-CV-0041 |

## MEMORANDUM OPINION AND ORDER

### I.　INTRODUCTION

Pending before the Court is the plaintiffs', Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") (collectively, the "plaintiff insurers"), motion for summary judgment (Dkt. No. 14) and the defendant, Grace Funeral Home, Inc. ("Grace"), response (Dkt. No. 15), the plaintiff insurers' reply (Dkt. No. 16) and Grace's sur-reply (Dkt.No. 20). After having carefully considered the motion, responses, replies, the record and the applicable authorities, the Court determines that the plaintiff insurers' motion for summary judgment should be **DENIED**.

### II.　RELEVANT BACKGROUND

This is an insurance coverage dispute emanating from two state-court lawsuits filed against Grace for services rendered in connection with the funeral and burial of Roberta Salazar and Martha L. Garza. The plaintiff insurers have brought the instant declaratory judgment action against Grace seeking a declaration that they have no duty to defend Grace in either the Salazar or the Garza lawsuits because the claims alleged in both lawsuits are excluded under the

"professional services exclusion" contained in the Policies.  On or about May 23, 2016, Ohio Security issued a Business Owners Policy No. BZS (17) 56 18 64 52 to Grace for the policy period beginning July 1, 2016 through July 1, 2017.  On or about May 25, 2016, Ohio Casualty issued a Commercial Umbrella Policy No. USO (17) 56 18 64 52 to Grace for the policy period beginning July 1, 2016 through July 1, 2017.

The first lawsuit, identified as Cause No. 18-08-83138-B and styled *Henrietta Salazar, Jessie Salazar, Loyola Galvan, Deola Guijon, and Anna Valenzuela v. Grace Funeral Home, Inc.*, was filed on August 13, 2018, in the 135th Judicial District Court of Victoria County, Texas.  The events germane to that suit are as follows:  On May 3, 2017, Roberta Salazar passed away at a hospital in Cuero, Texas.  On May 4, 2017, her family contacted Grace to arrange funeral services for her, including preparing and embalming her body for an open casket viewing before laying her to rest.  It appears that Ms. Salazar left specific instructions for her funeral, including a request that she be buried in a dress her deceased husband gave her on their 40th wedding anniversary.  Grace agreed to have her body ready for an open casket viewing to be held on May 12, 2017 and May 13, 2017.

On May 10, 2017, however, Grace informed the Salazar family that Ms. Salazar's body had been erroneously cremated.  As well, her cremated remains were inadvertently delivered to another family, who believing the cremated remains belonged to their loved one, buried the ashes.  In August 2018, the Salazar family filed a lawsuit against Grace in the 135th Judicial District Court of Victoria County, Texas asserting claims for breach of contract, wrongful cremation in violation of Texas Health and Safety Code, violations of the DTPA, negligence, and intentional infliction of emotional distress.  On July 16, 2019, they amended their petition dropping their DTPA and intentional infliction of emotional distress claims.

The second lawsuit, Cause No. 19-04-84399-C, and styled as *Imelda Mendoza, Individually and Priscilla Rocha, as Personal Representative of the Estate of Martha L. Garza*, was filed on April 30, 2019, in the 267th Judicial District Court of Victoria County, Texas. The facts alleged in the Garza lawsuit are as follows. After the death of Martha L. Garza on April 22, 2017, Imelda Mendoza and Priscilla Rocha contacted Grace to make funeral arrangements. Grace agreed to prepare Garza's body for cremation on May 6, 2017, so that Sunset Mortuary Services could later bury her ashes next to her brother. The Garza plaintiffs allege that Grace provided them with remains represented as belonging to Garza, which they buried.

On May 10, 2017, Grace informed them that Garza's remains were yet to be cremated and that the remains that had been represented as Garza's were not Garza's remains. In April 2019, the Garza plaintiffs filed a lawsuit against Grace in the 267th Judicial District Court of Victoria County, Texas asserting claims for breach of contract, mishandling of a corpse in violation of the Texas Health and Safety Code, violations of the DTPA, negligence, and intentional infliction of emotional distress. On August 26, 2019, they amended their petition and dropped their DTPA and intentional infliction of emotional distress claims.

Grace has requested that the plaintiff insurers provide it with a defense for the Salazar and Garza Lawsuits. The plaintiff insurers, however, now move for a summary judgment on their declaration that they have no duty to defend Grace for the underlying state-court lawsuits based on the "professional services exclusion" clause contained in the Policies.

### III. LEGAL STANDARDS

*A. Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A fact is material only if its resolution would affect the outcome of the action . . . an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

### B.     *Construction of Insurance Policies Under Texas Law Standard*

Texas substantive law governs this diversity suit including the interpretation of the insurance policies, as it relates to the intent of the parties, at the time the policy was formed. *See*, *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). Hence, terms within an insurance contract are given "their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208 - 09 (Tex. App. – Houston [1st Dist.] 2003, pet. denied) (internal citation omitted). Thus, where the wording of the contract is such that it "can be given a definite or certain legal meaning," then it is not ambiguous and is enforceable as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Only if an insurance contract is susceptible to multiple reasonable interpretations must a court adopt the interpretation most favorable to the insured. *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520.

## IV.     ANALYSIS AND DISCUSSION

"The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy" that permit the insurer to deny coverage. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citing *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. Civ. App. – San Antonio 1994, writ denied); *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App. – Fort Worth 2003, pet. denied). Where the insurer establishes that an exclusion applies, the burden shifts to the insured to prove an exception. *Guar. Nat'l Ins. Co.*, 143 F.3d at 193 (internal citation omitted).

The plaintiff insurers argue that the state court, underlying suit seek damages based on claims or acts of omissions that arise out of Grace's professional mortuary duties and/or services. As such, they contend that the "professional services exclusions" in the Policies preclude any duty on their part to defend Grace in the state-court lawsuits. In light of this defense, the Court turns to the Professional Services Exclusion Clauses contained in both the Commercial Umbrella and Business Owners' Policies issued by the plaintiff insurers. In pertinent part, they state:

. . .

**Professional Services**[1]

"Bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:
**(1)** Legal, accounting or advertising services;
**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
**(3)** Supervisory, inspection or engineering services;
**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
**(5)** Any health or therapeutic service treatment, advice or instruction;
**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;
**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;
**(8)** Body piercing services; and
**(9)** Services in the practice of pharmacy.

. . .

(Dkt. No. 14, Ex. C and D at pages 68 and 79, respectively).

---

[1] The Commercial Umbrella Exclusion contains the following additional language:
This exclusion applies even if the 'claims' against any 'Insured' allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that 'Insured', if the 'occurrence', 'offense' or other act, error or omission involved the rendering of or failure to render any professional service.

The term "professional services" is not otherwise defined in either of the Policies. Therefore, the resolution of the plaintiff insurers defense hinges on whether the factual allegations contained in the amended state petitions of the Salizar and Garza families, trigger the plaintiff insurers' duty to defend Grace in those lawsuits.[2] It is noteworthy that neither the Salizar's nor the Garza's complain about the quality of the cremation, burial or preparation of the remains of either decedent. Such complaints would fall into the category of professional services and, therefore, the Exclusion Clauses would apply. However, a plain reading of the Exclusion Clause hardly leaves doubt that cremation of a body when none was requested falls outside the "Professional Services Exclusion" Clauses. Hence, the snafu that resulted in a mix-up was clerical or administrative, not a result of professional services. *See Guaranty Nat'l Ins. Co.,* 143 F.3d at 193.

Under the demanding strictures applicable here, when construing the state court allegations liberally as this Court is required to do, the Court determines that the plaintiff insurers have a duty to defend Grace in the underlying state court lawsuits, because the allegations contained therein teaches that a "snafu" was the basis for Grace's mishandling of the Salizar and Garza remains. In the alternative, the complaint does not state facts sufficient to clearly bring the case within or without the coverage. The general rule is that the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy." *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552 (5th Cir. 2016) (emphasis in original) (internal citations omitted). "In other words, if there is doubt as to whether 'the allegations of a complaint

---

[2] Despite the plaintiff insurers insistence that the Original Petition filed in the state court controls, this Court takes judicial notice of the latest filed pleading in accordance with the eight corners' rule. "Where more than one pleading exists in the underlying suit, 'the duty to defend is determined by examining the latest, and only the latest, amended pleadings.'" *Amerisure Mut. Ins. Co. v. Miner-Dederick Constr., L.L.P.*, No. CV H-11-889, 2012 WL 13055567, at *5 (S.D. Tex. July 13, 2012) (quoting *Rhodes v. Chicago Ins. Co., a Div. of Interstate Nat. Corp.*, 719 F.2d 116, 119 (5th Cir. 1983)).

against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.'" *Id.* Accordingly, the plaintiff insurers have a duty to defend Grace in the Salazar and Garza Lawsuits.

## V. CONCLUSION

Based on the foregoing analysis and discussion, the plaintiff insurers' motion for summary judgment is **DENIED**.

It is so ORDERED.

SIGNED on this 25th day of June, 2020.

Kenneth M. Hoyt
United States District Judge